UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER GERARD FLETCHER,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**DECISION AND ORDER**
18-CV-6531S

    1.    Plaintiff Christopher Gerard Fletcher brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed his applications with the Social Security Administration on October 2, 2014. Plaintiff alleged disability beginning on February 1, 2012[1], due to hypertension, heart and renal failure, stage 3 kidney disease, diabetes, and lower back pain. (R.[2] at 44, 196.) Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

    3.    On March 30, 2017, ALJ Michael Devlin held a hearing at which Plaintiff— represented by counsel— and vocational expert Dawn Blythe appeared and testified. (R. at 42-73.) At the time of the hearing, Plaintiff was 41 years old with a 12th grade education and past work experience as a security guard, store laborer, and garment marker/tagger.

---

[1] Plaintiff amended his alleged onset date from January 28, 2011 to February 1, 2012 at the ALJ hearing.
[2] Citations to the underlying administrative record are designated as "R."

1

4. The ALJ considered the case *de novo* and, on June 26, 2017, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision[3]. (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 14.) Plaintiff filed a response on June 24, 2019 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 852 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's June 26, 2017 decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119, 126-127 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work. Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66, 70 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. at 17.) At step two, the ALJ found that Plaintiff has the following severe impairments: congestive heart failure; hypertension; kidney disease, stage 4; diabetes mellitus, type 2; diabetic neuropathy; proliferative diabetic retinopathy, keratoconus, and pseudophakia; status post vitreus hemorrhage left eye;

syncope; and asthma. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with certain exceptions:

> [Plaintiff] can occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk up to two hours in an eight[-]hour day; sit about six hours in and eight[-]hour day; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders[,] ropes[,] and scaffolds; never work at unprotected heights or near moving machinery; frequently perform tasks requiring far visual acuity (*i.e.* 20 feet o[r] more), near visual acuity (*i.e.* 20 inches or less) and/or close hand[-]eye coordination; and avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.

Id.

13. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 21.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 22.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 22-23.)

14. Plaintiff's sole argument for remand is that the ALJ failed to cite evidence that supports the visual acuity limitations included in the RFC. (Docket No. 9 at 9-12.) For the reasons that follow, this argument fails.

15. Plaintiff objects to the fact that "[t]he ALJ failed to point to any evidence that Plaintiff was engaged in any activities which would require him to maintain visual acuity frequently" and emphasizes that following his 2014 laser eye procedure, he required additional eye surgery in 2016. (Docket No. 9 at 11.) According to Plaintiff, these

5

circumstances "required [the ALJ] to obtain a medical opinion that spoke to Plaintiff's visual limitations." Id.

16.     "However, it is, in the first instance, the claimant's burden to provide adequate medical evidence." Gonzalez *ex rel.* Guzman v. Sec'y of U.S. Dep't of Health & Human Servs., 360 F. App'x 240, 245 n.4 (2d Cir. 2010); see also Bowen, 482 U.S. at 146 n.5 ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so").

17.     Here, Plaintiff has not pointed to any evidence that indicates he cannot perform tasks involving far/near visual acuity or hand-eye coordination frequently. Instead, Plaintiff expressly directs the Court to the absence of such evidence. (Docket No. 7 at 5-7.)

18.     Examining physician Dr. Toor found Plaintiff had no vision limitations on November 7, 2012, despite a diagnosis of mild to moderate non-proliferative diabetic retinopathy. (R. at 263-65.) "Plaintiff reported no visual problems to Dr. Fallano on November 11, 2013" (R. at 332) but was referred to an ophthalmologist in September 2014 for blurry vision and floaters in his left eye (R. at 352).

19.     He was diagnosed with proliferative diabetic retinopathy in both eyes with a vitreous hemorrhage and tractional retinal detachment in the left eye and underwent eye surgery on October 23, 2014. (R. at 294.) At his follow up appointment on November 3, 2014, Plaintiff reported improved vision and no pain. (R. at 300.) Dr. Davis noted that Plaintiff was doing well and that if he remained stable after a month, they would consider refraction[4]. Id.

---

[4] A vision test used to determine an individual's eyeglasses prescription. WebMD, Eye Health, https://www.webmd.com/eye-health/qa/what-is-a-refraction-in-an-eye-exam (last accessed Nov. 8, 2019).

20. At the next follow up visit on December 1, 2014, Plaintiff had no vision problems but reported a brief period of pain and photophobia that was already resolved by that time. (R. at 304.) Dr. Davis again noted that Plaintiff was doing well and indicated that his vision test should be conducted at the next available appointment. (R. at 308.)

21. The refraction test was conducted on December 23, 2014, at which time Plaintiff's eyeglasses prescription was updated. (R. at 311.) On March 2, 2015, Plaintiff's vision remained stable. (R. at 436.) In addition, his neuropathy was still present, "but stable to regressed" compared to prior exams. (R. at 437.) Ophthalmologist Dr. Davis indicated that if Plaintiff was still "stable and/or improved" at his next appointment in four months, he "can extend to 6 months and consider further care in gen clinic" instead of continuing to be seen at the retina clinic. Id.

22. Plaintiff's vision was stable on July 6, 2015 (R. at 455-6), and on August 5, 2015, Dr. Cheong opined that Plaintiff had no vision limitations. (R. at 623.) On January 4, 2016, Plaintiff reported a gradual decline in his vision and was diagnosed with a cataract on his left eye. (R. at 473, 483.) He had cataract surgery on February 23, 2016 (R. at 539) and was "doing well" 1 week later (R. at 540).

23. Plaintiff also points out that on April 15, 2016, another doctor filled out an employability assessment and found "[n]o abnormalities or limitations … with regards to his vision." (Docket No. 9 at 7, citing R. at 627.) Moreover, says Plaintiff, Dr. Cheong filled out a similar form on July 20, 2016. Id. (citing R. at 631.) Dr. Cheong again assessed no vision-related limitations. Id.

24. At his hearing on March 30, 2017, Plaintiff testified that he cannot work because of his high blood pressure, kidney problems, and diabetes. (R. at 53.) He added

that diabetes is his most significant health issue, and that his blood sugar is not always under control. Id.

25. Plaintiff also testified that he has bad eyesight and that his left eye is "very blurry" but has improved to the point that he can read a portion of a name tag worn by an individual about ten feet away from him, but "can't fully make out the last name" without using both eyes. (R. at 57.) His right eye was okay for reading, but when he has to read small print, he needs "to be right up on it to see it." (R. at 58.)

26. Plaintiff further testified that he is able to read all of his mail, but sometimes has to squint or get closer to the screen when watching TV. Id. However, reading for extended periods or watching TV for a long time does not bother him despite a "floater" on his left eye. (R. at 58-59.) Plaintiff described this "floater" as "a little black spot that pops up in [his] eye" and moves with his eyeball movements. Id.

27. Significantly, Plaintiff never argues that he does not retain the RFC to frequently perform tasks involving visual acuity. Apparently, Plaintiff would like the ALJ to order a consultative examination to contradict his own testimony and the medical opinions already in evidence that do not indicate more restrictive limitations are warranted. The Court declines to entertain this suggestion.

28. Where, as here, both the medical record and Plaintiff's own testimony supports the ALJ's RFC determination, there is no basis for remand. The Court finds that the ALJ's RFC determination is supported by substantial evidence and is otherwise devoid of legal error. Therefore, Plaintiff's motion is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: November 11, 2019
Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge